AUGUST KOEHLER, Respondent, *v.* MAX FEUERBACHER
*et al.*, Appellants.

### April 10, 1876.

An agreement between two keepers of places of public entertainment not to pay a bonus to any club or society, for twelve months ensuing the date of the agreement, as an inducement for the selection of any of the parks kept by the respective parties to the agreement, for festivities, is not void as against public policy.

APPEAL from St. Louis Circuit Court.

*Reversed and remanded.*

*Finkelnburg & Rassieur*, for appellants, cited: India Association *v.* Rock, 14 La. An. 168; Stanton *v.* Allen, 5 Denio, 435; Crawford *v.* Wick, 18 Ohio St. 203; Hilton *v.* Eckersby, 6 El. & Bl. 47–66; Horner *v.* Graves, 7 Bing. 743; Alger *v.* Thatcher, 17 Pick. 51.

*Gottschalk*, for respondent.

BAKEWELL, J., delivered the opinion of the court.

The petition in this case is as follows: "Plaintiff states that before and on February 13, 1873, this plaintiff, one John H. Schmidt, and the defendant Strube were each the keeper of a place of public resort for amusement, known respectively as the Union Park, the Concordia Park, and the Lindell Park, from the keeping of which places they derived a liberal income, and which constituted their business; that on said day they entered into a certain agreement, herewith filed and made part hereof, marked 'Exhibit A,' whereby they bound themselves each to the other, for the twelve months then next ensuing, among other things, not to grant, pay over to the benefit of any society, club, lodge, military or other company, nor to their officers, nor to any person, directly or indirectly, as an inducement or consideration for the selection of any of the said parks for festivities, any money or bonus, nor pay for any music band employed by such societies, and, in case of violation, they fixed the sum of $500 as the liquidated damages accruing to each one of the other parties to said agreement; and, to secure the payment of said sum of $500 to this plaintiff, in case of his, the said defendant, violating the agreement aforesaid, the said defendant Strube, as principal, and said Max Feuerbacher and Louis Schlosstein, copartners under the name of Feuerbacher & Schlosstein, as his securities, made, executed, and delivered to this plaintiff their certain writing obligatory, under their hands and seals, dated on said February 13, 1873, and herewith filed, marked

'Exhibit B,' whereby they bound themselves to pay to this plaintiff the sum of $500 if said Strube should break the condition of said bond, which is as follows :

" 'Now, if the above-bounden Louis H. Strube, during the duration of said agreement above specified, shall truly and faithfully comply with the terms and stipulations of said agreement, then this bond shall be void ; otherwise, to remain in full force and effect.'

" And this plaintiff further says that said Louis H. Strube committed the following breaches of the conditions of said bond—that is to say : He did not truly and faithfully comply with the terms and stipulations of said agreement, but, on the contrary, he did, during the year from February 13, 1873, to February 13, 1874, grant, contribute, and pay over to the benefit of a society, to wit, ' The Druids,' and to its officers, as an inducement or consideration for the selection of said ' Lindell Park ' for its festivity, money and bonus, to wit, the sum of $500, and did also, during the same year, pay for music bands employed by such societies, contrary to the terms of said agreement ; that this plaintiff, during said year, was the keeper of said ' Union Park,' and by the breaches of said bond, by the said defendant Louis H. Strube, was damaged and injured in a large amount, to wit, $1,000."

The petition further alleges that, by reason of the breaches assigned, the obligation of the defendants became absolute, and they thus became, and are, indebted to the plaintiffs in the sum of $500, for which, with costs, he asks judgment.

To this petition defendants Feuerbacher & Schlosstein demurred, on the ground that it does not set forth facts sufficient to constitute a cause of action. This demurrer coming on to be heard, plaintiff dismissed as to defendant Strube. The court sustained the demurrer, and, plaintiff refusing to plead further, judgment was entered in favor of defendants. From this judgment plaintiff appealed to general term, where the judgment of special term was

reversed and the cause remanded. From this judgment defendants Feuerbacher & Schlosstein appeal to this court.

We see nothing contrary to public policy in the contract set out in the petition, and think it is clearly one which the court must enforce.

What constitutes public policy is not, perhaps, exactly determinable; it is indefinite in its nature, changing with the habits, wants, and opinions of society. Forestalling, regrating, and engrossing were prohibited by statute in England 300 years ago, and were considered to be against policy so late as the time of Blackstone. They are now the great basis of profits; are not only practiced every day, but are recognized as the very life of trade, and without them it may be said that commerce, as known amongst us, would be at an end. To buy merchandise on its way to market, to buy provisions in any market and sell them again in the same market, or within four miles of the place, or to buy up provisions in large quantities for the purpose of selling again, were statutory offenses in England in the middle of the last century, and were recognized as offenses at common law long after the repeal of the statute. It is quite safe to consider that they would not now be held to be against public policy.

Contracts in total restraint of trade, or of marriage, against the prohibitions of statutes, to infringe a copyright, to defraud the government or third parties, to oppress third parties or prevent the due course of justice, or induce a violation of public duty, that tend to encourage unlawful or immoral acts, or that are founded on trading with an enemy, are all against public policy, and void. And, probably, this is a complete enumeration of the several classes to which contracts against public policy may be reduced. Undoubtedly the courts will give no countenance to an action founded on a contract which comes fairly under any one of these heads. But we utterly fail to see that the contract set forth in the petition can be brought under any one of them. It is urged

that it is a combination against the public to keep up prices; but it seems very clear that it is nothing of the kind. A custom of offering a bonus to certain organizations to hold festivals in this private park, or in that, must, one would think, have a tendency to enhance the price of admission to the entertainment. An agreement to be no longer a party to such a system of unfair competition strikes us as being eminently in the interest of good morals, fair and free trade, and honest rivalry in business. If dry-goods houses in a certain town should agree to employ no drummers for trade, or hotel-keepers to employ no runners, the contract would be much of the same character, and we see nothing illegal about it.

We see no force whatever in the objections urged by appellants to this contract as set out, and think the demurrer should have been overruled. The judgment of the general term of the Circuit Court, reversing the judgment of the special term, is affirmed and the cause remanded. The other judges concur.